Good morning, Your Honors. This is Telman Cannell of DLA Piper for Appellant Eagle View. With me today is my colleague, Andrew Escobar. It's his briefing, so if we win the victory, it's his. Your Honors, this Court in Sierra Online set out a crisp articulation of the standard that I think applies here today. That is the standard for whether the District Court abused its discretion in truncating the preliminary injunction to 60 days. I don't like to read great swaths. I'm not going to. Just part of one sentence. The test is this. Whether the trial judge has exercised his discretion in such a way as to minimize the risk that a litigant will suffer irreparable loss of legal rights in the period before final resolution of the dispute. It's our position that Judge Martinez did abuse his discretion by truncating the preliminary injunction at 60 days. He did not give us our rights after finding those rights existed. The way Judge Martinez got to his truncation is this. He looked at the contract. The parties were disputing the issue of had timely notice been given to not renew the contract, which is a 60-day period. In other words, ExactWare would have had to give us written notice prior to 60 days to expiration of the contract last fall. And after Judge Martinez found that there was irreparable harm, that the balance of the equities tipped in our favor, that the public interest was served by a preliminary injunction, he then said, but wait. The contract here says if ExactWare had timely given notice, you would have been out on your ear after 60 days anyway. So for that reason and that reason only, I'm only going to give you a 60-day preliminary injunction. That analysis by Judge Martinez is wrong for four reasons. First, the very prior page, Judge Martinez had found that ExactWare did not timely exercise the non-renewal clause. The 60-day provision is simply irrelevant to the party's relationship because it was not timely exercised. It truly is not a germane provision. Second. I don't understand that. I mean, he borrowed the 60-day provision. I'll grant you that. Because he's trying to, in the exercise of his discretion, understand for how long you will be irreparably harmed. And given that the parties to the contract contemplated a 60-day period, should one or the other choose not to renew the contract, it seemed that that was an appropriate proxy for the period during which without relief, your ego view would be irreparably harmed. And it wasn't an appropriate proxy, and that brings me to my second reason. It is this. Put aside the fact that the temporal trigger had not occurred in a timely fashion, and so already we think legally it's not germane. But more to the point, the way that clause works says, the way it's written is, the notice would have had been given sometime prior to, I don't know, September something. To borrow that clause, the court would have to say, that was the party's agreement for what defines irreparable harm. Judge Deary, that's not what that contract says. The contract says, if you exercise your rights correctly, then the other party must labor under the consequences whether the harm is irreparable or not irreparable. That clause does not say anything about limitations on injunctive relief. And so understanding parties could have written that clause. You negotiated that 60-day provision, both of you, with an eye toward the idea that someday ego view will not be a startup. It will be a successful, thriving, growing company, and perhaps want to be out on its own without the encumbrance of the contract. And that you needed 60 days to make that happen in a way that wouldn't cost you goodwill and so forth. It seems to me on the face of it, and I'm anxious to hear why it isn't, an appropriate, for lack of a better word, proxy for the district court. That was the period that you contemplated in the event the contract did not renew to make whatever adjustments you had to make with existing clients and so forth. Why isn't that an appropriate proxy? And by the way, how far are we going with this? Ultimately, you're now working since December 19th, I believe. Yes. And what's your home run? Are we going to keep this going indefinitely? Well, I think the entitled single is that we get a preliminary injunction until the time of trial, and then we establish a trial whether we get the home run, which would be the injunction for the four-year period. And during that time, are you to be permitted to develop your relationship with, I forget the company's name, Symbolify or whatever it is? Well, ExactWare maintains their restrictions on our ability to do that. Well, there arguably are restrictions on your ability to do that, whether they're right or wrong. Correct. So you contemplate holding ExactWare in place while you, perhaps at your peril, develop your independent relationship with this other company. Well, holding ExactWare in place, I think, Your Honor, is not a fair characterization. Remember, ExactWare has launched its own product, not using our photos. What they're saying is we can go off and do our own thing now, and you go off and do your own thing, and if you want to sue us, you sue us. Let's come back to your question that got us started on this lively discussion, and that's this. Why is it not an appropriate proxy? It's not an appropriate proxy because every surmise you made, Your Honor, is not supported at all in the record. Your surmise is that when EagleView and ExactWare sat down and negotiated that contract four-plus years ago, that what they said was, okay, if you don't renew, or excuse me, if you exercise the non-renewal provision, then we all agree 60 days is going to be enough, right? You're right that the parties agreed on that. What you're jumping to is that the parties also agreed, and if nobody does exercise the non-renewal provision, and one of us just walks out the door, you also only get 60 days. That is not what the parties agreed to. EagleView did never, ever sacrifice its contract rights in that way. EagleView never said... I have no quarrel with that. EagleView never negotiated that if the contract were breached in the way that ExactWare wants to do it, that we would somehow be limited to 60 days. The contract doesn't say that. The parties didn't negotiate that. ExactWare never produced any evidence that that was part of the parties' negotiations, and indeed... I have no disagreement with you. The kinds of clauses that you and I are used to seeing in commercial litigation that do that say things such as parties can only get equitable relief or injunctive relief for these kinds of things. If injunctive relief is accorded, it must be limited temporarily to this period. There are clauses that did that. This contract doesn't do that, and to borrow it and assume that that was the negotiation when ExactWare came forward with no evidence whatsoever that that was part of the negotiations is built on a completely imagined premise. Third, the point of a preliminary injunction is to preserve the parties' rights. In a contractual dispute, it's to preserve the parties' contractual rights. Here, it's a given because Judge Martin has found that we're more likely to prevail than not on the merits. That is to say we're entitled to four more years of the contract. How does only giving us 60 days of four-year period preserve our rights under the contract? The whole point of Sierra Online is you preserve the rights under the contract pending trial, and that's all we're asking for here is to preserve those rights pending trial. We cited and analyzed the John Goyack and Associates case in this court. But you don't really push any rights. You may enforce your rights through a breach of contract and claim for damages. The key question is where's the irreparable damage? Correct, and we're helped in that regard because Judge Martin has found that we suffer irreparable harm from termination of the contract. Remember that we are working in a world here in which ExactWare has locked up relationships with 19 of the top 25 property insurers, our lifeblood, 9 of the top 10 property insurers, our lifeblood, and 80% of the actual companies that do the contracting work, the repair work after a big storm, our lifeblood. It has its fingers around Eagle View's throat. If it's permitted to terminate this contract, as Judge Martin has found, it's very likely that what's going to happen is Eagle View is not going to exist anymore. Now, why that's irreparable harm is just for the very reasons that Judge Martin has found. He, at page 5 of his order, he explains, Eagle View faces the prospect of losing many of its customers permanently because they will turn to a competitor for the services that Eagle View can no longer provide through ExactWare. It will be difficult to win these customers back after they have undergone the training necessary to use other software. Not only was that evidence not disputed in the trial court, it's part of the fixture here. It's really not an appealed issue. It shouldn't be an appealed issue. It's subject to the abuse of discretion standard in any event. And so the fact is we've established that we're going to prevail on the merits, that we have irreparable harm, that that irreparable harm because if, you know, the 60-day notion, one could argue that Judge Martinez might have tried to get there another way than how he got there. He got there just from the 60-day term in the contract. But I suppose what he could have tried to do is what ExactWare has done, and that's say, well, you know, storm Sandy is winding down, and, you know, if you have 60 days to get ramped up, what do you care? You should be able, you should be ready to go. The evidence could not be further from the truth. There's no evidence in the record whatsoever to support the 60-day notion. That's why Judge Martinez only hung his hat on the 60-day clause, and, frankly, my clever colleague representing ExactWare, when he comes forward with an argument saying that Judge Martinez based his decision on the claims being processed post-storm Sandy, it's made-up stuff. It's a clever argument, but it's just made-up stuff. The record doesn't support that that's how Judge Martinez got there. And, indeed, what Judge Martinez said is the opposite of this notion that, well, okay, if we just lose our customers for 60 days, then you can get back up on your feet and get running. What he found, page 5 again, is we're not going to get our customers back. Once you lose those customers, they're gone. Why? Because they will have ramped up in the meantime with, oh, wait, it's the company they're already with, ExactWare. ExactWare will have substituted, it already has. How are you positioned any differently than if they had properly implemented the termination clause? You'd be exactly in the same place. Right, and that's completely irrelevant for all the reasons that I just specified. The contract isn't, that's not what the contract says. The time wasn't exercised. The parties didn't build in a clause that says if any party breaches the contract on 60 days' notice, then you don't. But we're talking about irreparable damage as opposed to contract damage. Right. Nothing in the contract says that if we breach, you only get injunctive relief for 60 days. The contract could have said that. It doesn't. And for Judge Martinez to go that direction, I think it is reversible error because it is an abuse of discretion. Judge Martinez found loss of goodwill, loss of market share. Were both parties given an opportunity? There was no testimony. There was no preliminary injunction. There was not a live witness hearing. And, of course, everybody had the opportunity to present it. Should they have chosen to do that? Yes, in our district court, a party could have chosen to do that and neither party chose to do that. I'm going to try to save a little bit of time. I'm down to two minutes. So with the panel's indulgence, I'll save the two minutes. Thank you, sir. Good morning, Your Honors. If it pleases the Court, John Tondini for Exec, who's the appellee in this case, even though it's the party that had an injunction imposed on them. And I think really the question today on this appeal is, should duration of a preliminary injunction order be in a district court judge's toolbox to use when it's appropriate to use? Of course. And the answer is, of course. But, I mean, is it appropriately used in this case and not subject to abuse of discretion? It's subject to abuse of discretion sort of on steroids because it's this sort of very definite. I don't think we've used that phrase. Well, not on steroids. I use that. But it's that the Ninth Circuit has said, we're not going to second-guess the determinations made by the district court who's weighing the evidence and weighing those affidavits and looking at a record that's assembled on 35 days' notice and holding a hearing just on affidavits and the papers. And the judge has to come to some sort of decision. Legal issues get reviewed de novo, but those factual determinations, the Ninth Circuit has said, we're not going to second-guess those. And the argument that counsel was just making about, geez, this is the lifeblood of the company and we're going to be in peril, when you read the transcript from the hearing below, that's precisely the argument he made to Judge Martinez. And Judge Martinez ruled as he did. Now, why did Judge Martinez rule the way he did? First, very important point. Judge Martinez found only that there was irreparable harm if there was an immediate termination. Judge Martinez did not find there's irreparable harm in this case. He said there's irreparable harm if there's immediate termination. That's right in his order, page 6, lines 3 through 4. But it is a little bit odd in cases to find a likelihood of success on the merits and not preserve the status quo until the merits hearing. And that's why he mentioned Superstorm Sandy in the conclusion of his order and why it was a palpable presence at the hearing on this matter, because the TRL was filed literally as the storm was still hitting, and 30 days or so later we had the preliminary injunction where there's still, you know, daily news about Superstorm Sandy. Because I think if you had removed Superstorm Sandy from the circumstances, I think Judge Martinez would not have granted this. Because, as we all know, traditional breach of contract results in a claim for money damages. And we cited to a case that Judge, I think it was Judge Tolman had decided just recently, where he goes through the lost profit analysis and says, this is what you get. You get lost profits when there's a breach of contract. And in that case, there was a dealer who had lost his rights, and that's what you get. Except that this is an injunction case. It's a permanent injunction case, where essentially they're arguing for specific performance of the contract. They've pled breach, I grant you that. And that's a little bit different from saying that damages can compensate. Well, except that's not what Judge Martinez found in this circumstance. And he's a judge sitting in equity. And we cited to the In re Fulmer case, which is a bankruptcy opinion, but it's got a very nice discussion about when are you going to order specific performance. Let me ask you a practical question. Let's assume that you lose at trial, hypothetically. And the judge finds, or the jury, depending on how it goes, determines that, in fact, the contract goes on for four more years. And if it's terminated in the interim, isn't that practically a termination? I mean, practically a termination, but in effect a termination? Well, I just don't know. I'm trying to understand the logic of what the district court did, because if the district court's convinced your opponents are going to win and this stays in effect for four years, you basically vitiate the contract if it's terminated in the interim. Well, I think you're putting too much into what was decided. The issue on the preliminary injunction hearing is, first, did this contract renew or not? And there was a disagreement about that. As we briefed, we think there was a misapplication of New York law, particularly as to whether you're required to, you know, dot the I's and cross the T's on the notice. You know, we think you don't have to hyper-technically follow the notice provision. Both parties here clearly indicated they didn't want these terms to carry forward. But putting that aside, so what did Judge Martinez decide? What he decided was, my quick read of this is that this renewed or they're likely to establish that. But that doesn't mean you get four years of contract performance, because that's assuming, well, you know, are they paying correctly? Are they in breach regarding civility? Are they honoring the other terms of this agreement? So, you know, you can say I've got an agreement to buy this house, but you've got to keep performing that, and you're not going to get an award, and that's why we cited in reformerism. You're not going to get a degree of specific performance in this case. And that's why Martinez says I'm only going to limit it to 60. And in the hearing, he specifically says this. He asked the rhetorical question. I won't say that he says it. He asked a rhetorical question. This isn't really the kind of case that you order specific performance in, because there's too many moving parts. This is a relationship contract, not a conveyance of real property contract. And in reformer, it was conveyance of real property, and even then the judge says I'm not going to grant specific performance. But when you have a relationship, it goes back to, you know, law school, where you all sort of learned about the opera singer who didn't want to perform, and so they sued for specific performance. And it's like, boy, those relationships, you don't want to force somebody to be your opera singer. You don't want to force somebody to finish remodeling your house, because do you really want to give them a key to your house when you're having a fight with them? So in relationship situations, you're not going to have specific performance, and that's why Judge Martinez did 60 days. And Judge Deary is right. The 60-day was a proxy. And this wasn't an invention of Judge Martinez. In the Rex medical case that they cite in reply, it's a 180-day injunction. Why is it 180 days? Because the judge in Rex medical did exactly what Judge Martinez did. He looks at the contract and says, you guys have a provision in there that talks about notice before termination. And if that was good enough for you in your contract, then that's good enough for me. Let me follow up on that, if I might, getting back to the question of equity. A fellow by the name of Barrow supplied a declaration and said, in effect, that back in 2008, when Eagle View was a startup, we figured 60 days was an appropriate point of time for us to unwind. But a lot has happened since 2008, and Eagle View has prospered. And given their success, query, would Mr. Barrow say the same thing about 60 days being an adequate period of time for Eagle View to make whatever adjustments are necessary in 2012? Yes. And how do I know that? Because the 60-day provision, yes, was in the original agreement in 2008, and that's what Mr. Barrow was speaking of in his declaration. But we also know, and it's in the record, that they amended this agreement in 2011. And in amending it in 2011, did they adjust that 60-day period? No. And that's the 2011 amendment is in Supplemental Excerpts of Record 279. You're talking about the negotiations that eventually fell apart? No, that's the next one I'm going to get to. So in 2011, they actually do an amendment, and they don't change the 60-day provision. So, you know, it's not 2008 anymore. Now it's 2011, but they still have the same 60 days. So in 2012, when Mr. Barrow sends that email that we argue is the notice, because he sends DLA Piper prepared new terms, one of those new terms is going to adjust and make more clear how you give notice of termination. And so they're going to actually rewrite Paragraph 9. In that, they still leave it at 60 days. So I would submit, yes, in 2008 they said 60 days, in 2011 they said 60 days, and in their own prepared terms in 2011 August, just months before this brouhaha erupts, they're still satisfied with 60 days. And that's why it was entirely reasonable for Judge Martinez to use that as a proxy, just as was done in Rex Medical. And as you said, of course there is the authority to do that in the Ninth Circuit. It comes from Lam Weston in, you know, and that's derived from the Supreme Court in the Weinberger case. I think it's particularly apt what the Supreme Court said there, where the plaintiff and the defendant present competing claims of injury. We're going to be devastated. Oh, it's not that bad. You've got an Internet site. You can move on. You know, you only wanted 60 days if we had given it. In such cases, the Supreme Court says, the district court balances the conveniences of the party and the possible injuries to them that they may be affected depending on whether you're granting or not granting the injunction. The essence of equity jurisdiction is the power of the chancellor to do equity and to mold the decree to the necessities of the particular case. And that's exactly what Judge Martinez did here. He says, he's got on the one hand, I've got a contract with a lot of moving parts. It's a relationship contract. You know, he analogized it to a divorce. These people have expressed to each other they don't want the old contract to continue, and yet one of them is saying, I want the old contract to continue, although I really don't want it to continue. I want different terms because that's why they sent the different terms. So, you know, you don't really want this contract, and it's going to be very difficult to supervise, so I don't think I'm ever going to grant specific performance. But we just got hit by the super storm. You guys worked together to do initial estimates for roof repairs, so I'm not turning the system off right now. We'll do 60 days, which is a proxy for what you've said you would need to move on in your relationship. That'll give us 110 days from super storm standing. That'll give us 60 days from today, which, you know, there's some objective manifestation that that's a proxy for what you would need to move on, and that's what I'll adopt here. You know, there's no finding that I'm going to find that I'm going to specifically enforce this for four years. No, but he does say that they established a likelihood of success on whether the contract was renewed, and you have all sorts of defenses to that. But if, in fact, that premonition is true and they succeed on that, it seems to me the status quo is not preserved. It's disrupted, and the game is over prior to trial. Here's the other part of the status quo that is actually disrupted by a continuing injunction, and that is in one of these relationship contracts, you have a natural sort of balance of powers, to use an old sort of pre-World War I term. You know, this contracting party has to perform to the satisfaction of this one, or this one won't perform, and then this one, and they have their gripes, but they're able to work it out if they want to continue working together. By having the injunction for 60 days was one thing. To then have it extend for longer, which is not at all what the district court judge wanted to do, that would be this court extending it, you're upsetting that balance of power, because Judge Martinez has interpreted the injunction to be that no matter what is done in terms of breach, you can't terminate the contract until the stay that the Ninth Circuit imposes is lifted. So it's tilted the playing field, and by removing the injunction, by removing the stay, we would return to that sort of normal commercial balance of power between contracting parties. I'm assuming, I'm changing topic for a second, but we're dealing with sophisticated parties and lawyers, and I assume that in terms of working out this issue, that the assistance of the circuit mediator would not be of assistance to you? Well, we actually, we did meet with Mr. Gels, who was great, and we met here just on this floor, just down the hallway, as I'm sure you know, and we met for most of the day. I think it went until 4 o'clock that day, and, you know, we worked on the issues, and we weren't able to resolve them, but Mr. Gels was great. And so in closing, in my 45 seconds here, we would ask that the 60-day injunction, that Judge Martinez's discretionary trial judge decision be affirmed, 60 days was all that was needed for an injunction in this case, and that the temporary stay issued by this court be dissolved. The more tools in a district court judge's toolbox, the better. Custom fit is a better policy choice than one-size-fits-all, which is what they want. Every injunction has to last up until time of trial. That's not the law of this circuit. Lamb-Weston, that was an eight-month one. Rex Medical, 180 days. Thank you. You may pass it. Note that Judge Martinez did not say the irreparable harm stops after 60 days. What he said was because of that 60-day term, you can't complain about it. Here are his words. This is at page 6 of his order, lines 4 and 5.  He doesn't step back one half-step even from his decision on page 5 that there's irreparable harm and that that's a lasting irreparable harm. What he says is, in fact, maybe it's not really a factual determination he made here with the 60 days. It may be a legal determination. It may be not even subject to the abuse of discretion standard. Call it lapse in logic, facts, I don't know. The fact is it's true that the only way he got to 60 days was using that proxy, and that just doesn't square with Sierra Online, which talks about preserving contract rights to the time of trial or the John Goyack case also from this court. Our saying that we could live with a 60-day provision, that with a boot on our neck five years ago when we negotiated the contract, with the leverage that my counterparty had at that time and Eagle View being a startup, our saying we'll live with it, we'll live with a 60-day term, says nothing about whether we suffer irreparable harm if they terminate the contract wrongfully. What about counsel's point that there were opportunities in 2011 and 2012 to amend that language during negotiations and Eagle View thought the 60 days was still fine? Would the court look at that as some indication of how long the parties thought it would take for them to unwind the relationship? No, because what we'd be talking about is how many developments might happen in the market between now and four years from now. We've got some very smart people. They developed some of the most sophisticated software imaginable to be able to look at a tilted roof and figure out exactly how many square feet it is from the sky. They're smart people. They're looking at the future of the business. They may well say in four years, the business is going to be completely different. We want to get out on 60 days' notice. I don't know. I'm speculating. There was nothing in the record about that. But the fact is, again, negotiating a term for what it takes to renew a contract says nothing about what is irreparable harm and what is not irreparable harm. Very often, parties enter into deals because they think they have to enter into deals, and that doesn't sacrifice their legal rights. If the contract, again, had said in a sophisticated fashion, we agree you can always seek injunctive relief, but never for more than 60 days, we'd be working on a different playing field. That's not what the parties said. Just saying, you know what, we can live with a 60-day notice provision, as I said before, says nothing about what the actual irreparable harm is. The irreparable harm here that we're going to be suffering is lasting. Once the contracting parties, both the property repairers and the insurers, take a walk, we never get them back. We go out of business. The whole point of this is just let's hold our breath the few months until trial. We've got an October trial date. We actually asked for an earlier trial date. The court saw fit to set an October trial date. It's not that far off. It's just around the corner here. Discovery is nearly completed, actually. All we're asking this court to do is just hold the parties' rights in place until that time. Given that already Judge Martinez has found we're likely to prevail on the merits, already given that, and nobody's questioning that here today, already that Judge Martinez has found we suffer irreparable harm, and, you know, it's every one of the categories that the Ninth Circuit has recognized. Loss of goodwill, he cites that. The Rendezitter case from this court says loss of goodwill is irreparable harm. Loss of market share, citing to the Stolberg case, Ninth Circuit decision again, again a Martinez finding. Huge loss of revenue that's going to probably put us out of business. That's the L.A. Coliseum case, again a Ninth Circuit decision. We fall into every category this court has recognized where there is an economic component to it, but there's still irreparable harm. Under the circumstances, Your Honor, we think the right, just, and proper thing to do as a matter of Ninth Circuit law under Sierra Online and John Goyack is extend the preliminary injunction until the October trial date. Thank you. Thank you, counsel. Thank you both for your arguments. The cases here will be submitted for decision.
judges: Dearie, Thomas, Nguyen